**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KEVIN ARTICE MILES,
        *Petitioner-Appellant,*

v.

CHARLES L. RYAN,
        *Respondent-Appellee.*

No. 10-99016

D.C. No.
4:01-cv-00645-RRC
District of Arizona,
Tucson

ORDER

Filed September 28, 2012

Before: Susan P. Graber, Circuit Judge.

Order;
Statement by Judges Berzon and Tallman

---

## ORDER

Appellant's motion for recusal is DENIED.

---

BERZON, and TALLMAN, Circuit Judges:

Appellant's motion to recuse Judge Graber was, in its format, directed to all three judges on the three-judge panel in this case. Under this Circuit's procedures, however, each judge may decide for himself or herself whether recusal is appropriate. *See, e.g.*, *Suever v. Connell*, 681 F.3d 1064 (9th Cir. 2012); *Feminist Women's Health Center v. Codispoti*, 69 F.3d 399 (9th Cir. 1995); 28 U.S.C.A. § 455. We therefore directed the motion to Judge Graber alone, who has denied the recusal request.

11859

Should our silence be misunderstood, however, we wish to state that were it appropriate for us to have participated in the recusal decision, we would have voted to deny the motion. Indeed, we regard the request itself as an inappropriate one.

The basis for the requested recusal was a tragedy in Judge Graber's life that occurred close to forty years ago, her father's murder and the subsequent prosecution of the perpetrator. The suggestion was that Judge Graber cannot fairly decide this capital murder case because of that history and some broad similarities between the two criminal cases.

Judge Graber has been a judge for almost twenty-five years. In that time, she has sat on numerous capital murder cases, voting to affirm some and to reverse others. She has never been asked to recuse in any of them and never has. There is absolutely no reason she should do so now.

All of us as judges have had life experiences that could be said to affect our perception of the cases that come before us. Some of us have served as prosecutors and others have not; some have experienced discrimination as women or minorities and others have not; some are intensely religious and others are not, and our religions vary; some have children and other relatives with disabilities and illnesses, physical and mental, while others do not; some have had personal experience, directly or through family members, as crime victims, while others have not; some have relatives who are police officers, civil rights activists, or journalists, and others do not; some served in the armed forces and others did not; some had personal experiences as immigrants and others did not. These life experiences do not disqualify us from serving as judges on cases in which the issues or the facts are in some indirect way related to our personal experiences.

Here, the suggested basis for questioning Judge Graber's impartiality is especially flimsy, as the acts on which it is based happened close to forty years ago. Judge Graber has

had that much time to absorb her loss. And there can be no rational suggestion that Judge Graber has anything at all to gain by denying habeas relief in this capital case, which concerns a crime and a defendant with nothing to do with her loss.

We addressed a somewhat similar issue in *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), when proponents of California's Proposition 8 amendment banning same-sex marriage sought to vacate the district court's judgment on the ground that Judge Vaughn Walker, the deciding judge, should have recused himself because he was gay and was in a same-sex relationship at the time he presided over the case. *See Perry v. Schwarzenegger*, 790 F. Supp. 2d 1119, 1121 (N.D. Cal. 2011). According to the proponents, this fact created a situation in which Judge Walker's "impartiality might reasonably be questioned," the same standard petitioner invokes here. *See id.* at 1129; 28 U.S.C. § 455(a). Chief Judge Ware, to whom the case was assigned following Judge Walker's retirement, denied the motion to vacate, explaining that "[i]n a case that could affect the general public based on the circumstances or characteristics of various members of that public, the fact that a federal judge happens to share the same circumstances or characteristic . . . is not a basis for disqualifying the judge." *Id.* at 1125. We affirmed. *Perry v. Brown*, 671 F.3d at 1095-96.

This court's standard for determining whether a judge's "impartiality might *reasonably* be questioned" is as follows:

> [We] ask whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. . . . The "reasonable person" is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer. The standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon

the merest unsubstantiated suggestion of personal
bias or prejudice.

*United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)
(citations and internal quotation marks omitted). No "well
informed, thoughtful observer," particularly one who has fol-
lowed Judge Graber's jurisprudence over the years, would
believe that Judge Graber's tragic experience many years ago
would so color her otherwise exemplary sense of duty and
judgment as to render her biased or partial in the particular
case.

Further, the motion for recusal in this case is peculiarly
timed. This case has already been decided, with Judges Gra-
ber and Tallman voting to affirm the denial of habeas relief
in this death penalty case and Judge Berzon voting to reverse
the penalty but not the conviction. The case is currently pend-
ing on a petition for rehearing. Although new counsel was
substituted while the case was pending, there is no reason
why the information about Judge Graber recited in the recusal
motion, derived from a very simple Internet search, could not
have been found by the former lawyers or the new ones
before the opinion issued. Indeed, the motion states that the
general historical facts were known, but not the details. To
make the motion after the initial outcome of the case was
known renders it even more inappropriate than its content
alone would indicate — which, as we have said, is itself con-
siderable.

We well understand that this is a death penalty case, and
that the petitioner's lawyers properly regard it as their duty to
try appropriately to raise every colorable issue that could pos-
sibly redound to their client's benefit. But asking for the
recusal of a member of this court who has decided capital
cases for over two decades because of something that hap-
pened well before she became a judge is a request lacking
even colorable merit. And doing so by reciting in detail the
facts of a long ago, tragic incident in her life, requiring her to

relive them yet again and exposing them anew to public view is, in our opinion, beyond the limits of appropriate representation.