IKUTA, Circuit Judge,
dissenting:
Today the majority offers a new way to evade AEDPA deference: make an unsupported — and unsupportable — assertion that the state court’s fact finding process is “unreasonable” for purposes of § 2254(d)(2).[1]
*793 In this case, the state judge resolved a recusal motion based on the judge’s own understanding of whether her impartiality might be questioned. Nothing about that is unusual: federal courts, including this one, uniformly adopt this approach. See, e.g., Suever v. Connell, 681 F.3d 1064, 1065 (9th Cir.2012); see also Miles v. Ryan, 697 F.3d 1090, 1090 (9th Cir.2012). Yet the majority notes that the state judge did not hold an evidentiary hearing on the petitioner’s claim that recusal was appropriate, and concludes that “[a]ny appellate court to whom this defect was pointed out would be unreasonable in holding that [the state judge’s] fact-finding process was adequate.” Maj. op at 791.
Of course this conclusion is wrong. Worse, this conclusion is likely to work mischief by casting doubt on whether state and federal judges can ever appropriately make recusal decisions without first holding evidentiary hearings. Making this conclusion even more absurd, the absence of an evidentiary hearing in this case is entirely irrelevant, because even if all the petitioner’s allegations were true, his due process rights were not violated.
And not only does the majority make the district court hold a meaningless evi-dentiary hearing, but the majority also requires it to engage in another futile exercise of considering whether the procedural default of the claim that Hurles’s appellate counsel was ineffective for failing to raise a meritless claim under Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) should be excused under Martinez v. Ryan, — U.S.-, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Because *794 even the most superficial review of this defaulted claim demonstrates that it is facially meritless, the majority violates our case law and wastes judicial resources by remanding it for further review.
Because this opinion misreads the law, distorts the record, and casts off AEDPA deference on the basis of a non-existent fact-finding flaw, I dissent.
I
A
The facts of Hurles’s crime form the backdrop for the dispute over whether Hurles needed a second attorney, which is at the heart of his habeas claim. The Arizona Supreme Court provided the following description:
On the afternoon of November 12, 1992, Hurles went to the Buckeye public library, a small, house-type building in a residential neighborhood. The only employee in the library at the time was Kay Blanton. The last patron, other than Hurles, left the library just before 2:40 p.m. Hurles then locked the front doors to the library and attacked Blan-ton in the back room. He stripped off her underwear and pulled her skirt, above her waist in an unsuccessful attempt to rape her. Using a paring knife found in the back room of the library, Hurles mortally wounded Blanton, stabbing her thirty-seven times and inflicting blunt force trauma by kicking her to such an extent he tore her liver.... [Hurles then fled the scene.]
Between 3:00 and 4:00 p.m., Hurles rode [a borrowed] bicycle to the home of his nephew, Thomas, in Buckeye and asked Thomas for a ride to Phoenix. Hurles had changed his clothes and cleaned himself up somewhat, and Thomas, who had been asleep and was unaware of Blanton’s murder, agreed to drive Hurles to Phoenix. As the two left the house, Hurles was carrying a bundle of clothes. During the drive to Phoenix, Thomas noticed that Hurles had bite marks on his wrist. When asked about them, Hurles told Thomas he had been in a fight with a Spanish man at the library, that he had stabbed the man with the man’s knife, and that he had received the bite marks in the fight. As part of his insanity defense, however, Hurles later claimed he had no recollection of anything that occurred between sitting in the library and going out the back door.
As they continued toward Phoenix, Hurles had Thomas pull over so he could toss the bundle of clothes out the car window. Thomas left Hurles at a Phoenix bus station, where he purchased a bus ticket to Las Vegas. Thomas returned to Buckeye, where he ultimately made contact with the police and told them of Hurles’ destination. Later that evening, the police intercepted Hurles’ bus on the way to Las Vegas; Hurles was removed from the bus, arrested, and returned to Phoenix.
With Thomas’ help, the police recovered Hurles’ discarded clothes. Police found blood on the clothing that matched Blanton’s blood type, which occurs in one percent of the population. Police also found blood matching Blan-ton’s type on Hurles’ shoes, which he was still wearing when taken from the bus. Four bloody shoeprints at the murder scene matched the soles of Hurles’ shoes, and Hurles’ palm print was found on the paring knife left at the scene....
... Blanton would have suffered great terror as she was stabbed repeatedly by Hurles. She also must have suffered great pain. In addition to the fifteen defensive stab wounds on her hands, *795 Blanton was stabbed eight times in the head, twelve times in the torso, and twice in her lower extremities. She also suffered blunt trauma consistent with kicking, which tore her liver.
The barrage of violence inflicted on Blanton, the fact that she was conscious throughout the attack, and her struggle to fight off her attacker all indicate she suffered terribly and far above the norm of even first-degree murder, leaving no room to doubt that this murder was especially cruel.
State v. Hurles, 185 Ariz. 199, 914 P.2d 1291, 1293-94, 1299 (1996).
B
After Hurles was indicted for this murder, Maricopa County appointed private defense counsel to represent him. Hurles made an ex parte motion for the appointment of a second counsel to aid in his defense. His argument was summary, comprising only four and a half pages. In identifying why he required the appointment of additional counsel, he made only three brief points: (1) “[i]t is apparent that this case will involve numerous civilian and law enforcement witnesses”; (2) “the State will utilize the services of forensic experts on the issues of identification and sexual assault”; and (3) “[preparation for the possible penalty phase will [be] in itself a time consuming, complex process.” To support his arguments on the third point, Hurles cited to California law, and its presumption that a second attorney is required in a death penalty case. As later noted by the Arizona Court of Appeals, Hurles’s motion for a second attorney was bare bones, and failed to make “a particularized showing on the need for second counsel.” Hurles v. Superior Court (Hurles I), 174 Ariz. 331, 849 P.2d 1, 4 (Ariz.Ct.App.1993). The motion made no mention of possible defenses, did not discuss the size of the defense’s witness pool for either the guilt or penalty phase, and did not specify any additional forensic or other technical information the defense would present on its own account. In short, it provided no substantial factual basis upon which the trial court could have concluded that a second attorney was necessary for Hurles to obtain adequate representation. Instead, the motion simply asserted that failure to appoint second counsel would potentially violate Hurles’s constitutional rights because “[d]efense counsel needs such co-counsel assistance due to the nature of the case in order to effectively advise the defendant and ensure the defendant’s right to the effective assistance of counsel.”
After the state trial court (Judge Hilli-ard) denied the request, Hurles filed a petition for special action in the Arizona Court of Appeals,[2] raising the same arguments he presented in his motion. Per Arizona’s rules for special actions, Hurles named the trial judge, Judge Hilliard, as a nominal respondent, and the State of Arizona, represented by the office of the Mar-icopa County Attorney, as the real party in interest. See Hurles I, 849 P.2d at 2. In response, the Arizona Attorney General filed a brief in Judge Hilliard’s name, in which the Attorney General explained that the presiding criminal judge of the Marico-pa County Superior Court (not Judge Hil-liard) had requested a responsive pleading in the special action. Id. at 2 n. 2. Then-current Arizona precedent held that a judge had the right to appear in special *796 action proceedings, even though the judge was merely a nominal party. Fenton v. Howard, 118 Ariz. 119, 575 P.2d 318, 320 (1978). The state Attorney General responded on Judge Hilliard’s behalf because Maricopa County, which was prosecuting Hurles, could not take a position on the selection of his counsel in the special action proceeding. Hurles I, 849 P.2d at 2.
The responsive brief explained the basis for Judge Hilliard’s determination that Hurles’s case was straightforward enough to be handled by one attorney. The brief reviewed the aspects of the ease that were relevant to making this determination. Rather than describing the facts of the underlying sexual assault and murder, the brief stated only that the State had charged Hurles “with the brutal murder of a librarian in Buckeye, Arizona in November, 1992,” and listed the three charges in the indictment. It stated that Hurles’s counsel had not yet noticed any defenses, disclosed the names of witnesses, or requested a competency examination. It then described the State’s case against Hurles: “An examination of the State’s evidence illustrates that its case against Petitioner is very simple and straightforward, compared to other capital cases, contrary to Petitioner’s assertions.” The brief noted that Maricopa County planned to call relatively few witnesses, namely ten law enforcement agents, the medical examiner, and several civilians, contrary to Hurles’s claim that a second counsel was required due to the high number of witnesses and forensic experts. Further, the brief stated that the county had expressed its intent to present the following physical evidence: Hurles’s clothing, which was “stained with blood of the same PGM type as the victim’s,” his footprint in the victim’s blood at the library, and the “fact that books returned by [Hurles] in the return slot at the library place him at the scene a[t] the time of the murder.” Thus, the brief focused on the straightforward nature of the State’s case and the facts in evidence; it did not discuss the merits or strength of the State’s case or presume that Hurles was guilty of the murder with which he was charged.
Turning to Hurles’s legal argument for appointment of a second attorney, the brief asserted that Hurles’s reliance on California precedent was misplaced because Arizona had adopted different rules and procedures. Specifically, according to the brief, while California law presumed the necessity of a second attorney in capital cases, Arizona had no such presumption. Further, in refuting Hurles’s claim that the need to prepare simultaneously for the guilt and penalty phases mandated the appointment of a second attorney, the brief noted that while California required sentencing to begin within 20 days of the verdict, Arizona gave a capital defendant 90 days after the verdict to prepare for sentencing, as well as the option to seek an extension of that time for good cause. These procedural differences made concurrent preparation for both phases far less urgent in Arizona than in its sister state.
In response to Hurles’s argument that appointment of a second attorney was necessary to “ensure the defendant’s right to the effective assistance of counsel,” the brief stated that “if Appointed Counsel believes, because of her caseload, personal competence, or otherwise, that she is incapable of rendering ‘competent representation’ of the Petitioner, she is ethically bound to withdraw from this case,” and asserted that there were other attorneys who provided contract services for Marico-pa County who would be able to provide competent representation.
C
Before addressing the merits of the special action petition, the Arizona Court of *797 Appeals determined that the case raised “a significant threshold question of standing” that gave the court the chance to refine its jurisprudence on “whether — or under what circumstances' — 'the trial court may properly respond” to a petition for special action. Hurles I, 849 P.2d at 1-2. After noting that the real party in interest in the special action proceeding was the State of Arizona, the court stated that “the record does not indicate whether Judge Hilliard, the nominal respondent, actually authorized such a pleading to be filed.” Id. at 2 n. 2. Further, the court stated that from the Attorney General’s statement at oral argument, “the pleading was requested by the presiding criminal judge, not by Judge Hilliard, and there was no contact between Judge Hilliard and the Attorney General’s office as the pleading was prepared.” Id.
Turning to the standing issue, the Arizona Court of Appeals acknowledged that in Fenton v. Howard, 118 Ariz. 119, 575 P.2d 318 (1978), the Arizona Supreme Court had held that “a judge does have the right to appear and to be represented in a special action against him, where the judge is a named respondent,” 575 P.2d at 320, and that a later appellate decision, State ex rel. Dean v. City Court of Tucson, 123 Ariz. 189, 598 P.2d 1008, 1009 (Ariz.Ct.App.1979), had interpreted Fenton as establishing “a trial judge’s unequivocal right to respond to a special action, whatever the nature of the decision the judge seeks to defend.” Hurles I, 849 P.2d at 3. Notwithstanding this precedent, after examining cases suggesting a narrower reading of Fenton, see, e.g., Dunn v. Superior Court, 160 Ariz. 311, 772 P.2d 1164, 1166-67 (Ariz.Ct.App.1989), the Arizona Court of Appeals held that a judge designated as the nominal respondent in a special action proceeding may file a brief for the purpose of defending an administrative policy or practice, but “that it is improper for a judge to respond merely to advocate the correctness of an individual ruling in a single case.” Hurles I, 849 P.2d at 3. Applying its new standing rule to the case before it, the court noted that because “the pleading merely argues that the respondent judge ruled properly on the evidence before her----the trial judge lacked standing” to file a brief in the special action. Id. at 4.
Turning its attention to the merits of the special action petition, the Arizona Court of Appeals upheld Judge Hilliard’s ruling. Because Hurles’s counsel had failed to make “a particularized showing” of the need for a second lawyer and did not “submit evidence to the trial court regarding customary practice in defense of capital cases,” the court found “no matter that warrants special action intervention at this time.” Id.
The case proceeded to trial. Hurles did not raise a judicial bias concern before or after the trial in which the jurors unanimously found him guilty of premeditated and felony murder. Nor did he raise such a concern at sentencing, where under then-current Arizona rules, the trial judge acted alone in imposing the death penalty. Nor did Hurles’s direct appeal or first petition for post-conviction relief raise a judicial bias claim.[3]
D
In January 2000, Hurles filed his first federal habeas petition in district court and filed an amended petition a few months later. The district court determined that Hurles had failed to present *798 two of his claims to state court, and so Hurles returned to the state court to exhaust these claims. In January 2001, Hurles filed a motion in the state court proceedings to recuse Judge Hilliard from further involvement in his case because he intended to file a second petition for post-conviction relief that would raise an ap-pearanee-of-bias due process claim based on the special action proceeding. Hurles’s recusal motion was referred to a different state trial judge, Judge Ballinger, who ruled that there was no basis to transfer Hurles’s case to another judge.[4]
In March 2001, Hurles submitted his second petition for post-conviction relief, which was assigned to Judge Hilliard pursuant to Arizona Rule of Criminal Procedure 32.4(e) and Judge Ballinger’s determination. Judge Hilliard noted the applicable objective test under Arizona law for recusal, specifically, “whether a reasonable and objective person knowing all the facts would harbor doubts concerning the judge’s impartiality.” In describing the facts of the special action, Judge Hilliard stated that the Attorney General had no specific authorization to file a pleading on her behalf in the special action, and that she (Judge Hilliard) had made no contact with the Attorney General’s office. She further noted that Hurles had not pointed to any aspects of the trial or the first petition for post-conviction relief that indicated bias. After ruling that the facts did not require her recusal as a matter of state law and did not amount to a due process violation, Judge Hilliard rejected Hurles’s bias claim in August 2002. The Arizona Supreme Court affirmed without opinion.
While this state court proceeding was ongoing, Hurles’s federal habeas proceedings were also moving forward slowly. In September 2008, the district court denied Hurles’s amended federal petition on the merits. Hurles timely appealed.
II
The correct application of AEDPA to this case is straightforward. The state court determined that Judge Hilliard’s role in Hurles’s proceedings did not deprive him of his due process rights. We are tasked with determining whether that determination was contrary to Supreme Court precedent for purposes of § 2254(d)(1).[5] A state court decision is “contrary to” clearly established Supreme Court precedent only if “the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent.” Lambert v. Blodgett, 393 F.3d 943, 974 (9th Cir.2004) (citing Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166,155 L.Ed.2d 144 (2003)). For AEDPA purposes, a point of law is not “clearly established” if a state court can *799 draw a “principled distinction” between the case before it and the Supreme Court precedent establishing that rule of law. Murdoch v. Castro, 609 F.3d 983, 991 (9th Cir.2010) (en banc).
A
Here, a state court could certainly draw a principled distinction between the situation in this case and those in the Supreme Court precedents cited by Hurles, and it is actually quite a stretch to hold these precedents applicable at all. The Due Process Clause requires recusal when “the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.” Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). This standard is objective; judges must recuse themselves in circumstances that “would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused.” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (quoting Turney v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). Judges are presumed to adjudicate with “honesty and integrity,” Withrow, 421 U.S. at 47, 95 S.Ct. 1456, however, and the situations in which this presumption is overcome are rare: “[M]ost matters relating to judicial disqualification do not rise to a constitutional level,” Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009) (quoting FTC v. Cement Inst., 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948)) (internal alteration omitted), and it is only in “rare instances” that the Constitution requires recusal. See Caperton, 556 U.S. at 890, 129 S.Ct. 2252.
“Supreme Court precedent reveals only three circumstances in which an appearance of bias — as opposed to evidence of actual bias — necessitates recusal.” Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir.2007). The first arises where a judge “has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants],” id. (quoting Tumey, 273 U.S. at 523, 47 S.Ct. 437) (internal quotation marks omitted), or where a financial connection to a litigant (such as a massive campaign donation from one party to the judge) creates a constitutionally intolerable risk of bias, Caperton, 556 U.S. at 884, 129 S.Ct. 2252. The second occurs when a judge “becomes embroiled in a running, bitter controversy” with one of the litigants. Id. (quoting Mayberry v. Pennsylvania, 400 U.S. 455, 465, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971)) (internal quotation marks omitted). Finally, due process might require recusal when a judge “acts as ‘part of the accusatory process.’ ” Crater, 491 F.3d at 1131 (quoting In re Murchison, 349 U.S. at 137, 75 S.Ct. 623).
Other than those cases in which judges have financial interests, which are not relevant here, the Supreme Court cases requiring recusal based on an appearance of bias arise in the context of criminal contempt proceedings. Caperton, 556 U.S. at 880, 129 S.Ct. 2252 (discussing precedent). In Murchison, for example, the Court held unconstitutional a Michigan practice in which judges would order witnesses to appear before them, hold them in contempt, and then preside over their contempt trials. 349 U.S. at 134, 75 S.Ct. 623. The Court held it unconstitutional for a judge to preside over a trial in this situation; it amounted to a “judge-grand jury,” which inappropriately involved the judge in the “accusatory process.” Id. at 137, 75 S.Ct. 623. In Johnson v. Mississippi, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971) (per curiam), the Court held it unconstitutional for a judge to preside over an individual’s contempt trial, where the individu *800 al had been held in contempt two days after successfully enjoining the judge from systematically excluding blacks and women from juries. Id. at 214, 91 S.Ct. 1778. That same year, in Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971), the Court held that a judge who had been berated continuously by a litigant before finally holding him in contempt could not preside over the contempt trial. Id. at 465, 91 S.Ct. 499 (“No one so cruelly slandered is likely to maintain that calm detachment necessary for fair adjudication.”); see also Taylor v. Hayes, 418 U.S. 488, 501-02, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974) (relationship between judge and lawyer was such that Due Process Clause required another judge for lawyer’s contempt trial).
The fact that all these cases arise in the context of criminal contempt proceedings is instructive because this highlights the circumstances where “the probability of actual bias ... is too high to be constitutionally tolerable,” Caperton, 556 U.S. at 877, 129 S.Ct. 2252 (quoting Withrow, 421 U.S. at 47, 95 S.Ct. 1456). Specifically, the probability of bias reaches constitutional proportions when a judge is in a position to first accuse an individual of wrongdoing and then sit in judgment of whether any wrong was in fact committed.
B
The state court’s rejection of Hurles’s due process claims was not contrary to these precedents because Hurles’s allegations, even if true, do not give rise to any of these circumstances. According to the majority, Hurles makes four allegations that, if true, “would show an unconstitutional risk of actual bias.” Maj. op. at 792. These four allegations are that Judge Hilliard: (1) “participated in the special action proceedings as more than a nominal party”; (2) “had contact with French”; (3) “commissioned or authorized the responsive pleading”; or (4) “provided any input on the brief.” Id. All four of these assertions are essentially the same; they allege that Judge Hilliard had some (or even significant) responsibility for the contents of the special action brief defending her decision to deny Hurles’s motion for a second attorney.
But even accepting these allegations as true, the concerns identified by the Supreme Court do not arise. First, this case does not involve a contempt hearing or any analogous situation; in the special action proceeding, Judge Hilliard neither acted as a prosecutor nor sought to advance the prosecutor’s interest, and thus was not part of the “accusatory process.” See Crater, 491 F.3d at 1131. The special action proceeding was ancillary to any determination of guilt or penalty, and involved an evaluation of the evidence only for the purpose of determining whether a second attorney was necessary. As the Arizona Court of Appeals noted, Judge Hilliard’s pleading “merely argues that the respondent judge ruled properly on the evidence before her.” Hurles I, 849 P.2d at 4. This sort of pleading is fully consistent with impartial adjudication.
Second, the record here does not show that Judge Hilliard was “enmeshed” in matters involving Hurles, or that someone in her position would likely have a personal animus toward him. The contents of Judge Hilliard’s brief are unremarkable. As described above, the brief explains the reasons Judge Hilliard denied the motion, namely, that the state’s evidence was simple and straightforward, Hurles’s counsel had not indicated an intent to put on a more complex defense, and what was “required to prepare for trial in this case is exactly what is required of defense counsel in any criminal case.” The Arizona Court of Appeals agreed with this conclusion.
*801 Indeed, a fair review of the brief provides no support for the majority’s assertion that the “tenor of Judge Hilliard’s responsive pleading in the special action proceeding, by itself, suggests] strongly that the average judge in her position could not later preside over Hurles’s guilt phase, penalty trial and post-conviction proceedings” in an unbiased fashion. Maj. op. at 792 (emphasis added). While the brief made mildly disparaging remarks regarding Hurles’s counsel (suggesting that if the counsel did not feel up to the task of rendering competent representation without court-appointed co-counsel, she should withdraw), the Supreme Court has never held that a judge’s sour or ill-tempered remarks alone create an appearance of bias necessitating recusal. See, e.g., Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (“[Ejxpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display,” does not necessitate recusal under 28 U.S.C. § 455(a)); see also United States v. McTiernan, 695 F.3d 882, 892 (9th Cir.2012) (holding that the presiding judge’s negative comments toward the defendant, such as stating that the defendant “is clearly willing to lie whenever it suits his purpose” did not warrant recusal); cf. United States v. Wilkerson, 208 F.3d 794, 799 (9th Cir.2000) (“The dissent erroneously conflates a judge’s asserted displeasure with ‘assuming the role of prosecutor’”). Thus, even if Judge Hilliard had personally penned the special action brief, Hurles did not suffer a due process violation.
In sum, even if we were to review the due process issues in this case de novo, Hurles would be unable to establish a due process violation. From this, it follows a fortiori that the state court’s conclusion was not “contrary to” clearly established precedent. Thus, the court is not relieved of AEDPA deference under § 2254(d)(1), and the district court’s decision should be affirmed.
Ill
The majority does not engage in this § 2254(d)(1) analysis. Instead, the majority holds that it is relieved of AEDPA deference under § 2254(d)(2) because the state trial court made an unreasonable determination of the facts. But the majority’s claim that the state court’s fact-finding process was deficient in some material way is entirely baseless.
A
In considering a challenge to a state court’s finding of fact, AEDPA requires deference to state court decisions unless those decisions are “objectively unreasonable,” not just incorrect. Lambert, 393 F.3d at 972; see also Schriro v. Landrigan, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). In considering this sort of challenge, “we must more than merely doubt whether the process operated properly.” Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir.2004). “Rather, we must be satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Id.
According to the majority, when Judge Hilliard rejected Hurles’s claim (in his second PCR petition) that she was biased due to her participation in the special action proceeding, Judge Hilliard engaged in objectively unreasonable fact-finding. Maj. op at 790-91. The majority claims that Judge Hilliard’s fact-finding process was deficient because: (1) she relied on her own recollections in determining that her role in the special action proceeding did *802 not require her recusal, Maj. op. at 790-91, and (2) she did not hold an evidentiary hearing to give Hurles an opportunity to present evidence. Maj. op. at 790. The majority asserts that any appellate panel would be unreasonable in finding Judge Hilliard’s fact-finding process adequate. Maj. op. at 791.
B
With all due respect, this reasoning does not pass the straight face test. We cannot hold that Judge Hilliard was objectively unreasonable in ruling on this recusal motion when federal judges, like Arizona judges, routinely rule on motions to recuse themselves. See 28 U.S.C. § 455(a); Ariz. Code of Jud. Conduct R. 2.11(A) (2009); see e.g., Miles, 697 F.3d at 1090 (Berzon, J. & Tallman, J.) (stating that “each judge may decide for himself or herself whether recusal is appropriate”); Suever, 681 F.3d at 1065 (Nelson, J.) (determining that she need not recuse herself from case because of the possibility of class membership). For the same reason, Judge Hilliard was not objectively unreasonable in consulting her own recollections; federal judges regularly determine the relevant facts in making recusal decisions. See, e.g., Cheney v. U.S. Dist. Ct. for the Dist. of Columbia, 541 U.S. 913, 929, 124 S.Ct. 1391, 158 L.Ed.2d 225 (2004) (Scalia, J.) (explaining his friendship with then-Vice President Cheney, and deciding not to recuse himself from a case in which Cheney was a nominal party); Microsoft Corp. v. United States, 530 U.S. 1301, 1301-02, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000) (Rehnquist, C.J.) (discussing his son’s representation of Microsoft in another matter, but deciding not to recuse himself because no “well-informed individual would conclude that an appearance of impropriety exists”); Perry v. Schwarzenegger, 630 F.3d 909, 912 (9th Cir.2011) (Reinhardt, J.) (discussing his relationship with his wife and her involvement in the matter before him in the course of concluding that “[proponents’ contention that I should recuse myself due to my wife’s opinions is based upon an outmoded conception of the relationship between spouses.”).
If anything, the fact-finding process Judge Hilliard engaged in was more careful and reasonable than those engaged in by judges of this circuit on a regular basis, because she received a separate opinion from Judge Ballinger, a different state court judge, who independently reviewed the record and concluded that there was no appearance of impropriety requiring re-cusal. Cf. Sivak v. Hardison, 658 F.3d 898, 924-25 (9th Cir.2011) (rejecting a similar judicial bias claim, and noting with approval that an independent judge determined that recusal was not necessary); Miles, 697 F.3d at 1090 (holding that a federal judge may decide her own recusal and rejecting the argument that other federal judges should vote on the issue). In light of Judge Ballinger’s review of the record and determination that Judge Hilli-ard’s impartiality could not be reasonably questioned, it seems impossible to conclude that all jurists would agree that the state court made an unreasonable determination of the facts.
C
The majority’s second rationale for holding that it is relieved of AEDPA deference, that no reasonable jurist could decide a recusal issue without holding an evidentia-ry hearing, is completely untenable and lacks any support in circuit or Supreme Court precedent. Until today, judges routinely decided for themselves whether re-cusal was appropriate in cases where their impartiality might be questioned. See, e.g., Suever, 681 F.3d at 1065. Evidentia-ry hearings were neither required nor typ *803 ically employed. See, e.g., Miles, 697 F.3d at 1090. Today’s opinion, however, raises troubling implications, and casts serious doubt on the permissibility of this longstanding practice.
This case is a particularly bad springboard for imposing a new evidentiary hearing requirement. We do not fault a state court for failing to hold an evidentiary hearing if the petitioner has not identified any evidence material to the constitutional claim. See Hibbler v. Benedetti, 693 F.3d 1140, 1148 (9th Cir.2012) (noting the well-established rule “that no [evidentiary] hearing is required [i]f the record refutes the applicant’s factual allegations or otherwise precludes habeas relief.” (quoting Landrigan, 550 U.S. at 474, 127 S.Ct. 1933)) (quotation marks omitted, second alteration in original). Rather, unless an alleged factual error “goes to a material factual issue that is central to petitioner’s claim,” Taylor, 366 F.3d at 1001, there is no “unreasonable determination of the facts” to justify relieving a federal court of AEDPA deference under § 2254(d)(2). Here, as previously explained, swpra Section II, even if an evidentiary hearing proved that Hurles’s factual allegations were true, and we deemed Judge Hilliard to be responsible for every word in the special action brief, Hurles did not suffer any violation of his due process rights. Under these circumstances, an evidentiary hearing would have been pointless, and thus the state court was not unreasonable in declining to hold one. See Hibbler, 693 F.3d at 1147 (“[a] state court’s decision not to hold an evidentiary hearing does not render its fact-finding process unreasonable so long as the state court could have reasonably concluded that the evidence already adduced was sufficient to resolve the factual question.” (citing Earp v. Ornoski, 431 F.3d 1158, 1170 (9th Cir.2005))).
In short, there was nothing wrong with the state court’s fact-finding process. This makes the majority’s conclusion that any appellate panel “would be unreasonable in holding that Judge Hilliard’s fact-finding process was adequate,” Maj. op. at 791, not only wrong, but objectively unreasonable. There is no rational justification for the majority to hold that it is relieved of AED-PA deference under § 2254(d)(2).
D
Finally, even if we were relieved of AEDPA deference, the majority errs in remanding the case to the district court for an evidentiary hearing. As the majority notes, the court must find that Hurles’s allegations, if true, would entitle him to relief. See Stanley v. Schriro, 598 F.3d 612, 624 (9th Cir.2010). But as previously discussed, there is simply nothing in the record, even under de novo review, that suggests an unconstitutional risk of bias. As the Supreme Court recently reminded us, it is not enough for a federal court to identify an unreasonable determination of the facts, there must also be a constitutional violation. See Wilson v. Corcoran, — U.S. -, 131 S.Ct. 13, 14, 178 L.Ed.2d 276 (2010) (“Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law”) (per curiam). Here there was neither, and the remand is erroneous and a waste of judicial resources.
IV
Not content with evading AEDPA review by erroneously invoking § 2254(d)(2), the majority also improperly invokes Martinez to excuse Hurles’s procedural default of his ineffective-assistance-of-appellate-counsel claims. Maj. op. at 781-83.
Martinez addressed a situation where a habeas petitioner raises a procedurally defaulted claim of ineffective assistance of *804 trial counsel. Under Martinez, a federal court can excuse the procedural default (and hear the claim) if: (1) the first place that claim could have been raised was in a state post-conviction relief proceeding (termed an “initial-review collateral proceeding” in Martinez); (2) the post-conviction relief counsel’s failure to raise that claim constituted ineffective assistance of counsel under Strickland-, and (3) “the underlying ineffective-assistance-of-trial counsel claim is a substantial one.” Martinez, 132 S.Ct. at 1318. In order to show ineffective assistance of counsel under the Strickland standard, a petitioner must show: (1) that the counsel’s performance was deficient, because counsel “made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment,” and (2) that this deficient performance was “so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As the Supreme Court has noted, we review ineffective assistance claims under a “highly deferential” standard, indulging “a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.” Id. at 689, 104 S.Ct. 2052.
The majority here focuses on Hurles’s claim that his appellate counsel rendered ineffective assistance by failing to raise an Ake claim to the state court.[6] Maj. op. at 782-83. This claim is procedurally defaulted, but Hurles argues that the court should excuse the default because it was caused by ineffective assistance of post-conviction counsel. But contrary to the majority’s conclusion, Hurles did not have cause to excuse this procedural default for a simple reason: There is no colorable claim that Hurles’s appellate counsel was ineffective under Strickland, and therefore, post-conviction relief counsel could not have been ineffective for failing to bring a meritless ineffective-assistance-of-appellate-counsel claim.
According to Hurles, appellate counsel’s error was the failure to argue on appeal that the trial court’s denial of Hurles’s request for a brain scan violated Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). But the failure to raise such an Ake claim to the state appellate court could not be ineffective assistance of counsel. At trial, Hurles presented an insanity defense. Under Arizona’s then applicable M’Naghten test for insanity, Hurles had to prove by clear and convincing evidence that he “was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if [he] did know, that [he] did not know that what he was doing was wrong.” Ariz. Rev.Stat. § 13-502(A) (1993). The state trial court provided Hurles with a psychiatric expert to assist in his insanity defense, as required by Ake, and denied only Hurles’s request for a brain scan to confirm the expert’s diagnosis that Hurles had *805 organic brain damage. When the brain scan was subsequently performed for the sentencing hearing, it showed only “subtle nonspecific abnormalities ... associated with mild processing difficulty” that were consistent with “attention deficit disorder.” [7]
Under these circumstances, it would be reasonable for appellate counsel to decide not to raise an Ake claim. First, such a claim would be contrary to Ninth Circuit precedent. “By its own terms, Ake ‘limited the right it recognized’ to the ‘provision of one competent psychiatrist.’ ” Leavitt v. Arave, 646 F.3d 605, 610 (9th Cir.2011) (quoting Ake, 470 U.S. at 79, 105 S.Ct. 1087) (internal alterations omitted). We have explained that “the defendant lacks the right to appointment of a second psychiatrist even where the first psychiatrist is alleged to be incompetent or reaches a diagnosis unfavorable to the defense.” Id. (internal quotation marks and citations omitted). Indeed, we have stated that “Ake’s limitation to a single, independent psychiatrist is critical given that [psychiatry is not ... an exact science, and psychiatrists disagree widely and frequently ... on the appropriate diagnosis.” Id. (internal quotation marks omitted); see also Pawlyk v. Wood, 248 F.3d 815, 823 (9th Cir.2001) (“[A] state is required to ensure to a defendant only the provision of one competent psychiatrist” (internal quotation marks omitted)); Harris v. Vasquez, 949 F.2d 1497, 1516-18 (9th Cir.1990) (same). The majority suggests that appellate counsel could have distinguished these and other cases, Maj. op. at 782-83, but even were this possible, the decision not to raise such a claim falls well within the “exercise of reasonable professional judgment,” Strickland, 466 U.S. at 690, 104 S.Ct. 2052, given the weight of case law counseling against raising an Ake claim when the trial court denied funds for a second psychiatric expert.
Further, even if appellate counsel had a colorable legal basis to claim there was an Ake error at trial, the record established that any such error was harmless beyond a reasonable doubt. Appellate counsel would have known that the brain scan prepared for Hurles’s sentencing hearing showed only that Hurles’ suffered from a “subtle and nonspecific abnormality” consistent with attention deficient disorder. Such evidence would not have helped Hurles prove by clear and convincing evidence that his mental disease was so severe that he did not “know the nature and quality of the act” or “that what he was doing was wrong.” Ariz.Rev.Stat. § 13-502(A) (1993). To the contrary, the results of the brain scan would have entirely undercut Hurles’s insanity defense, which was based on expert testimony that Hurles experienced a psychotic episode at the time of the crime due to an unspecified brain injury. Cf. Vickers, 144 F.3d at 616 (rejecting an Ake claim when an adverse finding would have “seriously undercut” the defense).
In sum, appellate counsel could reasonably decide not to bring a claim of a trial-level Ake error because such a claim would have no support in the law, and any error would have been harmless. Accordingly, the failure to bring such a claim could not be ineffective assistance of appellate counsel under Strickland. And because there was no viable ineffective-assistance-of-appellate-counsel claim based on the alleged *806 Ake error, post-conviction counsel could not be ineffective for failing to raise it.
As a result, the majority doubly errs in remanding Hurles’s defaulted claim that appellate counsel rendered ineffective assistance of counsel. Hurles could excuse the procedural default only if post-conviction counsel was ineffective for failing to raise this claim. But under a proper application of the deferential Strickland standard, the ineffective-assistance-of-appellate-counsel claim is meritless, and therefore post-conviction counsel could not be ineffective for failing to raise it. Where “there is little doubt about the correct answer” to the petitioner’s defaulted claims, the appellate panel should “decide [the] issue in the first instance rather than remand to the district court.” Detrich v. Ryan, 740 F.3d 1237, 1248 (9th Cir.2013) (en banc) (plurality opinion). By failing to apply Strickland’s deferential standard correctly (or at all), the majority ignored “the correct answer,” id., and accordingly erred in excusing Hurles’s default.
V
The Supreme Court has harshly criticized our noncompliance with AEDPA deference.[8] Here the majority repeats the same mistake corrected by the Supreme Court in Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), now under the guise of a § 2254(d)(2) analysis instead of § 2254(d)(1) review. As in Harrington, the majority used its de novo conclusion that Hurles suffered a due process violation as a springboard for its § 2254(d)(2) ruling. In effect, the majority holds that the state court’s factual determination was unreasonable because the court failed to acknowledge that its participation in the special action proceeding had violated *807 Hurles’s due process rights. Harrington corrected a similar error: “The Court of Appeals appears to have treated the unreasonableness question as a test of its confidence in the result it would reach under de novo review,” and because the court “had little doubt that [defendant’s constitutional] claim had merit, the Court of Appeals concluded the state court must have been unreasonable in rejecting it.” Harrington, 131 S.Ct. at 786. Equally applicable is Harrington's criticism of the Ninth Circuit for “overlooking] arguments that would otherwise justify the state court’s result.” Id. As in Harrington, the majority here failed to weigh the evidence in the record that made the state court’s fact-finding process and factual conclusions reasonable, relying instead on an unprecedented view that judges must hold evidentiary hearings on recusal motions. Finally, as Harrington stated, “[i]t bears repeating that even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable.” Id. The majority clearly lost sight of this rule, because there is no basis for its holding that the state court’s fact-finding was either substantively or procedurally unreasonable. And even if Hurles’s factual allegations were true, they do not form the basis of a due process claim, making remand for an evidentiary hearing wholly inappropriate. Turner v. Calderon, 281 F.3d 851, 890 (9th Cir.2002).
Our responsibility here is clear: under the strictures of AEDPA and Supreme Court precedent, we are bound to uphold the state court’s denial of Hurles’s due process claim, which is neither contrary to Supreme Court precedent nor based on an unreasonable determination of the facts. Because the majority’s decision invalidates a lawfully imposed capital sentence, further frays the (increasingly threadbare) fabric of our AEDPA jurisprudence, and lays the groundwork for other frivolous habeas challenges to trial judges’ impartiality, I dissent.
ORDER
Petitioner’s motion to remand pursuant to Martinez v. Ryan, — U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), filed February 11, 2013, is GRANTED in part and DENIED in part as discussed in the opinion filed together with this order.
IT IS SO ORDERED.

. A reasonable person may wonder why the majority has reissued this opinion for the third time, almost four years after the case was submitted on October 7, 2010, particular *793 ly when doing so will vacate a prior version of the opinion which has been the subject of a cert petition pending before the Supreme Court for nearly a year.
A brief history is in order. After the case was submitted in 2010, the majority issued its first opinion on July 7, 2011. 650 F.3d 1301 (9th Cir.2011) (withdrawn). After Arizona filed a petition for rehearing, and the majority ordered a response, the majority withdrew its opinion and reissued a revised opinion on January 18, 2013. 706 F.3d 1021 (9th Cir.2013) (withdrawn). An accompanying order stated that Arizona’s petition for rehearing and rehearing en banc was moot. Id. at 1027.
On February 1, 2013, Arizona filed a motion asking the court to rule on its petition for rehearing en banc which had been pending for more than 17 months. Arizona argued that its petition for rehearing was not moot, because the second version of the opinion made the same mistake as the first version: both opinions sidestepped AEDPA deference by holding that the state trial court made an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2).
While Arizona’s motion was pending before the panel, Hurles filed a motion to remand his ineffective assistance of counsel claims pursuant to Martinez v. Ryan, - U.S. -, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). Although Hurles’s motion came a year after Martinez was decided, and was clearly waived (as well as being meritless, as explained below), the panel stayed the mandate on March 19, 2013, pending a decision by our en banc panel in Detrich v. Ryan, 740 F.3d 1237 (9th Cir.2013). When this opinion was issued in September 3, 2013, it did not shed any light on Hurles’s Martinez motion. But the panel further deferred its ruling on Hurles’s Martinez motion pending the mandate of this court's decision in Nguyen v. Curry, 736 F.3d 1287 (9th Cir.2013), which was finally issued in April 2014.
In fact, the majority failed to address Arizona’s February 2013 motion for a ruling on its original petition for rehearing until today. Concerned that its petition for certiorari would become time barred under U.S. Supreme Court Rule 13(2), Arizona filed a protective petition for certiorari on June 17, 2013. The Supreme Court first distributed this cert petition for the conference of September 30, 2013, and has relisted it for every subsequent conference.
In this third opinion, the majority persists in making the same error that Arizona targeted in its original petition for review, and by vacating its second opinion, has further delayed the Supreme Court's consideration of this error.

. Under Arizona law, the denial of a motion for appointment of a second attorney is not immediately appealable, and so a petitioner seeks review of such a ruling by filing a petition for special action in the Arizona Court of Appeals. See Hurles I, 849 P.2d at 1 n. 1.

. Per Arizona Rule of Criminal Procedure 32.4(e), Hurles’s first petition for post-conviction relief was assigned to Judge Hilliard. The trial court denied the petition, and the Arizona Supreme Court affirmed. Arizona v. Hurles, No. CR-99-0422-PC, Order Denying Petition for Review (Ariz. Jan 7, 2000).

. Judge Ballinger construed Hurles’s motion as a motion for change of judge for cause, which, under Arizona Rule of Criminal Procedure 10.1(a), entitles a defendant "to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge.”

. The state trial court's decision is the last reasoned decision on this claim, and therefore the one that we must consider under AEDPA review. See Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). Because the court did not expressly apply the Supreme Court's decisions considering when a probability of judicial bias rises to a constitutional level, only the “contrary to” prong of § 2254(d)(1) is at issue here. See Williams v. Taylor, 529 U.S. 362, 405-07, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (describing the situations in which the "contrary to" prong will apply).

. Hurles claims ineffective assistance of appellate counsel, even though such claims are not cognizable under Martinez, which only allowed petitioners to raise procedurally defaulted claims based on ineffective assistance of trial counsel. See Martinez, 132 S.Ct. at 1315. Martinez held that the rule barring procedurally defaulted claims "governs in all but the limited circumstances” the Supreme Court had carved out in that opinion, which did not include appellate counsel claims. Id. at 1320. Nevertheless, the Ninth Circuit has ignored this limitation, and expanded Martinez to apply to claims of ineffective assistance of appellate counsel. See Nguyen v. Curry, 736 F.3d 1287, 1289 (9th Cir.2013). Although this holding is contrary to Supreme Court precedent, it is nevertheless the settled law of this circuit. Accordingly, a court in our circuit must consider Hurles’s claims of ineffective assistance of appellate counsel.

. Indeed, the test results were so unhelpful that Hurles’s attorney at sentencing ignored them for mitigation purposes. Even though the trial court must consider any relevant mitigating factor, Eddings v. Oklahoma, 455 U.S. 104, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), sentencing counsel preferred to focus on a theory that Hurles’ brain damage was not the sort that showed up in brain scans.

. See, e.g., Cavazos v. Smith, — U.S. -, 132 S.Ct. 2, 7, 181 L.Ed.2d 311 (2011) (per curiam) ("Doubts about whether Smith is in fact guilty are understandable. But it is not the job of this Court, and was not that of the Ninth Circuit, to decide whether the State's theory was correct. The jury decided that question, and its decision is supported by the record."); Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1410-11, 179 L.Ed.2d 557 (2011); Felkner v. Jackson, - U.S. -, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) (per curiam) (stating that our decision that the state court's determination was an unreasonable determination of the facts was “as inexplicable as it is unexplained”); Swarthout v. Cooke, - U.S. - , 131 S.Ct. 859, 863, 178 L.Ed.2d 732 (2011) (per curiam); Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011); Premo v. Moore, - U.S. -, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011); Rice v. Collins, 546 U.S. 333, 342, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) ("The panel majority’s attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus.”); Schriro v. Smith, 546 U.S. 6, 8, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005) (per curiam) ("[T]he Court of Appeals exceeded its limited authority on habeas review....”); Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (per curiam) ("[The Ninth Circuit’s] conclusion failed to give appropriate deference to the state court’s decision."); Yarbor-ough v. Gentry, 540 U.S. 1, 11, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam); Woodford v. Visciotti, 537 U.S. 19, 20, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam) (reversing Ninth Circuit’s grant of habeas relief because it "exceed[ed] the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)”); Early v. Packer, 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (admonishing the Ninth Circuit for "repeatedly and erroneously substitutpng]” the phrase " 'failed to apply ’ clearly established Supreme Court law” for "the more demanding requirement of § 2254(d)(1): that the decision be 'contrary to ' clearly established Supreme Court law” (emphases added)); see generally Hon. Diarmuid F. O'Scannlain, A Decade of Reversal: The Ninth Circuit’s Record in the Supreme Court Through October Term 2010, 87 Notre Dame L.Rev. 2165, 2168-76 (2012).